IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JASON MONTEIRO, | : | |
|     Petitioner | : | |
| | : | No. 1:20-cv-2116 |
| v. | : | |
| | : | (Judge Kane) |
| STEPHEN SPAULDING, | : | |
|     Respondents | : | |

**MEMORANDUM**

On November 13, 2020, pro se Petitioner Jason Monteiro ("Petitioner"), a federal prisoner incarcerated at United States Penitentiary at Lewisburg ("USP Lewisburg") in Lewisburg, Pennsylvania, initiated the above-captioned case by filing a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241. (Doc. No. 1.) Petitioner paid the filing fee on December 11, 2020. In an Order dated December 15, 2020, the Court directed Respondents to file a response to the § 2241 petition within twenty (20) days. (Doc. No. 4.) Respondents filed their answer on January 4, 2021. (Doc. No. 6.) Petitioner filed a traverse on January 28, 2028. (Doc. No. 7.) Accordingly, Petitioner's § 2241 petition is ripe for disposition. For the following reasons, the Court will dismiss Petitioner's § 2241 petition without prejudice as unexhausted.

**I.    BACKGROUND**

Petitioner is an inmate currently confined at the satellite camp at USP Lewisburg since June 18, 2018. (Doc. No. 6 at 2.) Petitioner is serving a sixty month term of imprisonment imposed by the United States District Court for the District of Nevada for conspiracy to possess with intent to distribute a controlled substance. (See No. 20-cv-1956, Doc. 6 at 2.) His current projected release date is May 7, 2022, assuming he receives all good conduct time he could potentially earn. (Id.)

In the petition, Petitioner argues that he was wrongfully expelled from the Residential Drug Abuse Program ("RDAP") after he had already graduated from the program. (Doc. 1.) As a result, he claims that he lost one year early release to which he would otherwise be entitled under 18 U.S.C. § 3621(e)(2)(B). (Id. at 6.) Petitioner requests reinstatement of his one year early release as well as his immediate release under supervision or home confinement. (Id. at 8.) Petitioner admits that he has failed to exhaust his administrative remedies to the final level of appeal to the Central Office, but he argues that doing so would be futile because he should have already been released by now. (Doc. 1-1 at 17-18.) He also argues that he does not need to exhaust his administrative remedies because the issue raised in his petition presents only an issue of statutory interpretation. (Id. at 18.)

Respondent requests that the Court dismiss the petition because: (1) Petitioner failed to exhaust his administrative remedies; (2) federal courts lack subject matter jurisdiction to review the Bureau of Prison's (BOP) individualized RDAP determinations; and (3) Petitioner's expulsion from RDAP was neither arbitrary nor capricious, thus his claim is without merit. (Doc. 6.) In the answer, Respondent explains the RDAP program:

> Pursuant to 18 U.S.C. § 3621(b), the BOP is directed to make available appropriate substance abuse treatment for each prisoner the Bureau determines has a treatable condition of substance addiction or abuse. As such, the BOP must provide residential substance abuse treatment to eligible prisoners. 18 U.S.C. § 3621(e)(1). The BOP has discretion to determine which prisoners are eligible to participate in the RDAP and even to grant or deny eligible inmates sentence reductions upon successful completion of the program. Id. at § 3621(e)(2)(B). Participants who successfully complete the RDAP may have their sentences reduced by up to one year. Id. The BOP has established regulations governing eligibility for participation in the RDAP. 28 C.F.R. § 550.53; BOP Program Statement 5330.11, Psychology Treatment Programs.
>
> The RDAP consists of three components. 28 C.F.R. § 550.53(a). The first component is the residential unit-based component. Id. at § 550.53(a)(1). This component is comprised of a course of individual and group activities provided by a team of Drug Abuse Treatment Specialists and the Drug

2

> Abuse Program Coordinator in a separate treatment unit apart from the general prison population. Id. In component two, inmates must participate in the follow-up services to the RDAP unit-based component. 28 C.F.R. § 550.53(a)(2). At this interval, inmates receive counseling support while they transition back into general population. Id.
>
> The final RDAP component is the community Transitional Drug Abuse Treatment component (TDAT). Id. at § 550.53(a)(3). Inmates who have completed the unit-based program and (when appropriate) the follow-up treatment and are transferred to community confinement, must successfully complete community-based drug abuse treatment in a community-based program to have successfully completed RDAP. Id. For inmates to successfully complete all components of RDAP they must participate in TDAT in the community. Id. If they refuse or fail to complete TDAT, they fail the RDAP and are disqualified from receiving additional incentives, including possible early release under 18 U.S.C. § 3621(e)(2)(B). 28 C.F.R. § 550.56(a).

(Id. at 3-5 (some internal citations omitted).)

Respondent explains that in July 2020, Petitioner was participating in the second component of RDAP, "follow-up services." (Id. at 5.) On July 17, 2020, Petitioner received a formal warning after a unit officer observed him sleeping during program hours and missing a service committee meeting. (Id.) On August 24, 2020, Petitioner's participation in the second component of RDAP was noted as "minimally satisfactory," and when advised of this, Petitioner refused to take responsibility for his participation. (Id.) On September 2, 2020, Petitioner's unit counselor informed the drug treatment specialist that Petitioner had been fired from his job for failing to perform his duties and for lying to the counselor when questioned. (Id. at 5-6.) Petitioner was then expelled from the RDAP program on September 3, 2020. (Id. at 6.) In Petitioner's traverse, Petitioner reiterates the arguments that he makes in the petition. (Doc. 9.)

II.     DISCUSSION

A prisoner must exhaust all stages of the administrative remedy system prior to the filing of a habeas petition under 28 U.S.C. § 2241. See Moscato v. Fed. Bureau of Prisons, 98 F.3d 757, 760 (3d Cir. 1996); Bradshaw v. Carlson, 682 F.2d 1050, 1052 (3d Cir. 1981) ("A federal

3

prisoner ordinarily may not seek habeas corpus relief until he has exhausted all administrative remedies."); Arias v. U.S. Parole Comm'n, 648 F.2d 196 (3d Cir. 1981). Requiring inmates to exhaust their remedies serves a number of purposes, such as "(1) allowing the appropriate agency to develop a factual record and apply its expertise facilitates judicial review; (2) permitting agencies to grant the relief requested conserves judicial resources; and (3) providing agencies the opportunity to correct their own errors fosters administrative autonomy." See Moscato, 98 F.3d at 761-62. Exhaustion of administrative remedies requires compliance with an agency's deadlines, other critical procedural rules, and all steps of the available administrative process. See Woodford v. Ngo, 548 U.S. 81, 90-92 (2006); Jones v. Bock, 549 U.S. 199, 218 (2007) (holding that proper exhaustion is defined by applicable prison requirements).

In order to exhaust administrative remedies, a federal prisoner must first attempt to informally resolve the dispute with institution staff. See 28 C.F.R. § 542.13. Then, if informal resolution efforts fail, the prisoner may raise his complaint to the warden of the institution in which he is confined. See 28 C.F.R. § 542.14. If the warden denies the administrative remedy request, the prisoner may next file an appeal with the regional director within twenty days from the date of the warden's response. See 28 C.F.R. § 542.15. Finally, if the regional director denies the appeal, the prisoner may then appeal that decision to the general counsel of the Federal Bureau of Prisons at the Central Office within thirty days from the date of the regional director's response. See 28 C.F.R. § 542.15. No administrative remedy appeal is considered to have been exhausted until it is decided on its merits by the Central Office. See 28 C.F.R. §§ 542.10–542.19.

Here, Petitioner admits in the petition that he has failed to exhaust his administrative remedies but argues that requiring him to exhaust would be futile. In certain circumstances,

courts have excused the exhaustion requirement, including when requiring a prisoner to exhaust his administrative remedies would be futile or the issue involves only statutory construction. See, e.g., Coleman v. U.S. Parole Comm'n, 644 F. App'x 159, 162 (3d Cir. 2016) (stating that "exhaustion is not required with regard to claims which turn only on statutory construction"); Gambino v. Morris, 134 F.3d 156, 171 (3d Cir. 1998) (Roth, J., concurring) (finding exhaustion excused upon petitioner showing futility); Lyons v. U.S. Marshals, 840 F.2d 202, 205 (3d Cir.1988) (finding exhaustion excused when agency actions clearly and unambiguously violate statutory or constitutional rights); Carling v. Peters, No. 00-cv-2958, 2000 WL 1022959, at *2 (E.D. Pa. July 10, 2000) (holding that exhaustion excused where delay would subject petitioner to irreparable injury in the context of military enlistment). Petitioner presents no facts from which this Court could conclude that exhaustion would be futile. Further, over the past year, the district courts have held that prisoners are still required to exhaust their administrative remedies as to requests for home confinement and that exhaustion in such a circumstance is not futile, even in the context of a pandemic. See, e.g., Jackson v. White, No. 20-cv-919, 2020 WL 3036075, at *7 (M.D. Pa. June 5, 2020); Cordaro v. Finley, No. 10-CR-75, 2020 WL 2084960, at *5 (M.D. Pa. April 30, 2020).

Petitioner cites a decision from the United States District Court for the District of New Jersey, Goodman v. Ortiz, No. 20-cv-7582, 2020 WL 5015613 (D.N.J. Aug. 25, 2020), where the court excused the petitioner's failure to exhaust his administrative remedies because the issue involved in his habeas petition involved only statutory construction. There, both parties admitted that the petitioner had completed the activities needed for an earlier release date under the First Step Act, 18 U.S.C. § 3632(a), and that petitioner was eligible for these additional time credits due to his completion of these activities. The respondent, however, contended that it was not

5

required to award this additional time credit to the petitioner until after the two year phase in period for the statute had expired on January 15, 2022. Goodman is inapplicable to Petitioner's circumstance because the parties dispute whether Petitioner has successfully completed the RDAP program such that he would be eligible for additional time credits under the First Step Act. Thus, the issue here is not one only involving statutory construction.

Petitioner has failed to exhaust his administrative remedies, and he has also failed to demonstrate that doing so would be futile. As such, the petition must be dismissed.[1] See Arias, 648 F.2d at 199 (noting that if a prisoner does not exhaust available administrative remedies, the petition should be dismissed).

### III. CONCLUSION

For the foregoing reasons, Petitioner's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 (Doc. No. 1) will be dismissed without prejudice. An appropriate Order follows.

---

[1] The Court notes that the administrative remedy process is still available to Petitioner, and thus Petitioner's claim is not procedurally defaulted. In the alternative, if the claim were procedurally defaulted, Petitioner has failed to present any cause for his failure to exhaust his administrative remedies. See Moscato, 98 F.3d at 761 ("[I]f a prisoner has failed to exhaust his administrative remedies due to a procedural default and the default renders unavailable the administrative process, review of his habeas claim is barred unless he can demonstrate cause and prejudice.").